Mannon v. County of Laclede, Missouri, et al.

Case No. 6:26-cv-03197-BCW

United States District Court

Western District of Missouri, Southern Division

# EXHIBIT A

## Proposed First Amended Complaint

Attached to Plaintiff's Motion for Leave to File First Amended Complaint

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF MISSOURI**

**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LESLIE DENNIS MANNON,**<br><br>Plaintiff,<br><br>v.<br><br>**COUNTY OF LACLEDE, MISSOURI; LINDA CANSLER, individually and in her official capacity as Laclede County Clerk; AMY FOLSOM, individually and in her official capacity as Laclede County Prosecuting Attorney; and LARITA POPE, individually,**<br><br>Defendants. | ) | Civil Action No. 6:26-cv-03197-BCW |

FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

**JURY TRIAL DEMANDED**

**INTRODUCTION**

1. Plaintiff Leslie Dennis Mannon (hereinafter "Dennis Mannon" or "Plaintiff"), proceeding pro se, brings this action against Defendants County of Laclede, Missouri; Linda Cansler, individually and in her official capacity as Laclede County Clerk, Election Authority, and Clerk to the County Commission; Amy Folsom, individually and in her official capacity as Laclede County Prosecuting Attorney; and LaRita Pope, individually, an unidentified poll worker who physically participated in the deprivation of Plaintiff's constitutional and statutory

rights. This Complaint seeks compensatory and punitive damages, declaratory relief, and injunctive relief for violations of Plaintiff's rights under the United States Constitution; 42 U.S.C. Sections 1983, 1985, and 1986; the Voting Rights Act of 1965, 52 U.S.C. Section 10307(b); the Americans with Disabilities Act, 42 U.S.C. Section 12132; the Missouri Sunshine Law, RSMo Sections 610.010 et seq.; and Missouri common law.

2. On October 31, 2024, during early voting for the November 5, 2024 General Election at the Laclede County Government Building in Lebanon, Missouri, Plaintiff was lawfully casting his ballot when Defendant Cansler began yelling at him from across the room. When Plaintiff — who is partially deaf — did not respond, Cansler approached him and placed her right hand on Plaintiff's left shoulder, making unauthorized physical contact, before placing her hand in front of his voting screen. Simultaneously, Defendant LaRita Pope kneeled beside Plaintiff and continued to interrupt his voting process. These actions constituted physical assault, battery, voter intimidation, and unauthorized observation of Plaintiff's ballot. When Plaintiff asked the unidentified poll worker for her name, she refused to identify herself — a refusal captured on video that evidences consciousness of wrongdoing.

3. Plaintiff is a heart attack survivor who suffers from partial deafness and medical anxiety. The multi-person physical confrontation at his voting station was particularly disorienting and threatening given his hearing impairment, and caused severe distress that directly aggravated his pre-existing coronary condition and anxiety disorder. Defendants made no accommodation whatsoever for Plaintiff's known or apparent disabilities during the confrontation or at any time thereafter.

4. In the seventeen months that followed the incident, Defendants engaged in a coordinated campaign of denial, evidence destruction, records obstruction, and fraudulent delay designed to prevent Plaintiff from obtaining accountability or legal redress. Defendant Cansler destroyed surveillance footage of the incident in violation of federal election records preservation law, obstructed Plaintiff's lawful requests for public records under the Missouri Sunshine Law, and denied that events occurred which are documented by contemporaneous evidence. Defendant

Folsom, exploiting her position as the County's chief legal officer, engaged Plaintiff in a year-long sham cooperation process -- purporting to address his complaints through policy reform while, in reality, running out the statute of limitations on Plaintiff's state-law claims. Folsom never disclosed her inherent conflict of interest, never advised Plaintiff to seek independent counsel, and never warned Plaintiff that his legal deadlines were expiring, even after Plaintiff himself raised the issue of the approaching limitations period in writing.

5. This action seeks to vindicate Plaintiff's fundamental right to vote free from intimidation and obstruction; to hold Defendants accountable for the systematic destruction of evidence, obstruction of public records, and fraudulent concealment that followed; to obtain compensatory and punitive damages for the physical, emotional, and legal injuries Plaintiff has suffered; and to secure declaratory and injunctive relief that will prevent Defendants from subjecting any other citizen to similar abuse of governmental power.

## JURISDICTION AND VENUE

6. This Court has original federal question jurisdiction over this action pursuant to 28 U.S.C. Section 1331, as Plaintiff's claims arise under the Constitution and laws of the United States, including 42 U.S.C. Sections 1983, 1985, and 1986; the Voting Rights Act of 1965, 52 U.S.C. Section 10307(b); the federal election records preservation statute, 52 U.S.C. Section 20701; and the Americans with Disabilities Act, 42 U.S.C. Section 12132.

7. This Court has jurisdiction over Plaintiff's civil rights claims pursuant to 28 U.S.C. Section 1343(a)(3), which confers jurisdiction over actions to redress the deprivation, under color of state law, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens.

8. This Court has jurisdiction over Plaintiff's civil rights claims pursuant to 28 U.S.C. Section 1343(a)(4), which confers jurisdiction over actions to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

9. This Court has supplemental jurisdiction over Plaintiff's state-law claims -- including his claims under the Missouri Sunshine Law, RSMo Sections 610.010 et seq., and his Missouri common law claims for fraud and fraudulent concealment -- pursuant to 28 U.S.C. Section 1367(a), as those claims are so related to the federal claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. The state-law claims arise from the same nucleus of operative facts as the federal claims: the October 31, 2024 voter intimidation incident, the subsequent destruction of evidence, the obstruction of public records, and the fraudulent delay scheme designed to prevent Plaintiff from obtaining legal redress.

10. This Court has authority to issue declaratory relief pursuant to 28 U.S.C. Sections 2201 and 2202, the Declaratory Judgment Act, and may declare the rights and legal relations of the parties and grant further necessary or proper relief based upon such declaration.

11. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(1) and (b)(2), because all Defendants reside in this judicial district and because all events and omissions giving rise to Plaintiff's claims occurred in Laclede County, Missouri, which is within the Western District of Missouri, Southern Division.

12. Plaintiff demands a trial by jury on all issues so triable as a matter of right pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure.

## PARTIES

13. Plaintiff Leslie Dennis Mannon, known as and hereinafter referred to as Dennis Mannon, is a citizen of the United States and a resident of Lebanon, Laclede County, Missouri. Plaintiff's address is 25641 Ortega Drive, Lebanon, Missouri 65536. Plaintiff is a registered voter in Laclede County, Missouri, and was registered to vote and eligible to vote in the November 5, 2024 General Election. Plaintiff is a heart attack survivor who suffers from partial

deafness and medical anxiety, conditions that are substantially limiting and that qualify as disabilities within the meaning of the Americans with Disabilities Act, 42 U.S.C. Section 12102.

14. Plaintiff brings this action pro se. Plaintiff is not a licensed attorney. To the extent any pleading or filing in this case does not conform to every technical requirement of the Federal Rules of Civil Procedure, Plaintiff respectfully requests that the Court construe his filings liberally, as is required for pro se litigants. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

15. Defendant County of Laclede, Missouri (hereinafter "Laclede County" or "the County") is a political subdivision of the State of Missouri organized and existing under the laws of the State of Missouri, with its principal offices located at 200 North Adams Avenue, Lebanon, Missouri 65536. Laclede County is responsible for the administration of elections within its jurisdictional boundaries, including the provision of polling places, the appointment and supervision of election workers, and the preservation of election records. Laclede County is a "person" subject to suit under 42 U.S.C. Section 1983 pursuant to Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978), and is a "public entity" subject to Title II of the Americans with Disabilities Act, 42 U.S.C. Section 12131(1).

16. Laclede County is liable under Section 1983 because the deprivations of Plaintiff's constitutional rights resulted from official County policy or custom. Defendant Cansler, as County Clerk and chief Election Authority for Laclede County, is the final policymaker for election administration within the County. Her actions and decisions in the administration of elections, including the conduct of polling-place operations, the training and supervision of election workers, and the preservation or destruction of election records, constitute official County policy for purposes of municipal liability under Monell and its progeny. Alternatively, the County is liable for its deliberate indifference to the need for adequate training of its election officials and poll workers in the areas of voter rights, election law, disability accommodation, and public records law.

17. Defendant Linda Cansler (hereinafter "Cansler") is a natural person and citizen of the State of Missouri. At all times relevant to this Complaint, Cansler served as the duly elected County Clerk for Laclede County, Missouri, and in that capacity served as the County's Election Authority under Missouri law and as Clerk to the Laclede County Commission. Cansler's office is located at 200 North Adams Avenue, Room 103, Lebanon, Missouri 65536. Cansler is sued in both her individual capacity and her official capacity as Laclede County Clerk. In her individual capacity, Cansler is liable for her personal participation in the deprivation of Plaintiff's constitutional and statutory rights. In her official capacity, suit against Cansler is the equivalent of suit against Laclede County itself. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). At all times relevant to this Complaint, Cansler acted under color of state law within the meaning of 42 U.S.C. Section 1983.

18. Cansler attended annual election training conducted by Chrissy Peters, Director of Election Integrity at the Missouri Secretary of State's Office, on September 3 through 6, 2024, at the Sheraton Westport hotel in St. Louis, Missouri -- approximately fifty-five days before the October 31, 2024 incident. Cansler was thus trained on proper election conduct and voter rights by the very office that subsequently confirmed Plaintiff's rights were violated. She cannot claim ignorance of the legal obligations she breached.

19. Defendant Amy Folsom (hereinafter "Folsom") is a natural person and citizen of the State of Missouri. At all times relevant to this Complaint, Folsom served as the duly elected Prosecuting Attorney for Laclede County, Missouri. Folsom's office is located at 200 North Adams Avenue, Lebanon, Missouri 65536. Her office telephone number is (417) 532-3149. Folsom is a licensed attorney admitted to the practice of law in the State of Missouri and is bound by the Missouri Rules of Professional Conduct. Folsom is sued in both her individual capacity and her official capacity as Laclede County Prosecuting Attorney. At all times relevant to this Complaint, Folsom acted under color of state law within the meaning of 42 U.S.C. Section 1983.

20. As Prosecuting Attorney, Folsom simultaneously occupied the role of the County's chief legal officer -- with a duty to protect the County from legal liability -- and the role of a public official purporting to assist Plaintiff in addressing his complaint against the County and its agents. This inherent and undisclosed conflict of interest is central to Plaintiff's claims against Folsom, as detailed in the factual allegations set forth below.

21. Absolute prosecutorial immunity does not bar this action against Defendant Folsom. Prosecutorial immunity is functional, not categorical: it shields only conduct "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976); Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Folsom's conduct challenged in this Complaint -- soliciting, drafting, and managing a civilian "cooperative" correspondence with Plaintiff outside any pending criminal prosecution; drafting and reviewing a public-records policy for the County; communicating with Plaintiff regarding civil claims against another County official; and misrepresenting a state-law limitations period to a private citizen -- is administrative and civil-advisory, not advocative or quasi-judicial. Such functions are not protected by absolute immunity. Buckley, 509 U.S. at 273-74 (administrative and investigative acts get only qualified immunity); Van de Kamp v. Goldstein, 555 U.S. 335, 343-44 (2009); Schenk v. Chavis, 461 F.3d 1043, 1046 (8th Cir. 2006). Folsom is sued in her individual capacity for these non-prosecutorial acts and is not entitled to absolute immunity.

22. Defendant LaRita Pope (hereinafter "LaRita Pope") is a natural person whose LaRita Pope is a natural person and citizen of the State of Missouri. LaRita Pope was a poll worker or election worker at the Laclede County Government Building on October 31, 2024, during early voting for the November 5, 2024 General Election. LaRita Pope personally and physically participated in the obstruction, intimidation, and unauthorized observation of Plaintiff's voting process. When Plaintiff directly asked LaRita Pope for her name, she refused to identify herself -- a refusal that was captured on video. LaRita Pope acted as an agent, employee, or authorized representative of Laclede County and Defendant Cansler, and at all times relevant to this Complaint acted under color of state law within the meaning of 42 U.S.C. Section 1983.

23. Based on information obtained through a Missouri Sunshine Law response from Defendant Folsom dated April 29, 2025, which identified the poll workers present on October 31, 2024, Plaintiff believes that LaRita Pope is one of the following individuals: Belinda Frazier, LaRita Pope, or Carolyn Fletcher. Plaintiff will seek to determine LaRita Pope's true identity through discovery in this action, including but not limited to comparison of video evidence to personnel records, depositions of known election workers present on October 31, 2024, and production of documents reflecting poll worker assignments, schedules, and identification records. Plaintiff reserves the right to amend this Complaint to substitute LaRita Pope's true name upon identification, pursuant to Rule 15 of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

### A. The Incident -- October 31, 2024

24. On October 31, 2024, between approximately 9:15 and 9:30 AM, Plaintiff Leslie Dennis Mannon appeared at the Laclede County Government Building, located at 200 North Adams Avenue, Lebanon, Missouri 65536, for the purpose of casting his ballot during early voting for the November 5, 2024 General Election.

25. The November 5, 2024 General Election was a federal election that included candidates for President of the United States, United States Senator, and United States Representative.

26. Plaintiff was a registered voter of Laclede County, Missouri, and was lawfully entitled to cast a ballot at said location during the early voting period.

27. Upon entering the polling place and receiving his ballot, Plaintiff began the process of casting his vote and recording his voting transaction in accordance with Missouri Revised Statute Section 115.637(10), which permits a voter to make a record of his or her own voting transaction.

28. While Plaintiff was actively marking his ballot, Defendant Linda Cansler began yelling at Plaintiff from across the room, repeatedly demanding that he stop what he was doing. Plaintiff, who is partially deaf, did not hear or respond to her commands. These verbal commands from across the room are captured on the audio recording made by Plaintiff.

29. When Plaintiff did not respond — because he could not hear her due to his partial deafness — Defendant Cansler approached Plaintiff at his voting station. Upon reaching Plaintiff, Defendant Cansler placed her right hand on Plaintiff's left shoulder, making unwanted and unauthorized physical contact with Plaintiff's person, and then placed her hand directly in front of Plaintiff's voting screen, physically obstructing his view of his ballot and his ability to continue casting his vote.

30. Simultaneously, Defendant LaRita Pope, an unidentified poll worker, kneeled down to Plaintiff's right side and continued to interrupt Plaintiff's voting process, issuing additional commands and further obstructing his ability to concentrate on and complete his ballot.

31. The physical contact by Defendant Cansler — placing her hand on Plaintiff's shoulder without consent — constitutes battery under Missouri law. No election official has the legal authority to physically touch a voter engaged in the act of casting a ballot. This unwanted physical contact escalated the confrontation from verbal intimidation to a physical assault upon Plaintiff's person.

32. When Plaintiff asked Defendant LaRita Pope for her name, she refused to identify herself. This refusal was captured on video recorded by Plaintiff.

33. Defendant LaRita Pope's refusal to identify herself while acting in an official capacity as a poll worker at a public polling place demonstrates consciousness of wrongdoing.

34. The combined actions of Defendants Cansler and LaRita Pope constituted disruption of a polling place, physical obstruction of a voter's ballot, unauthorized observation of Plaintiff's voting process, and verbal intimidation of a voter engaged in the act of voting.

35. Plaintiff is partially deaf. The chaotic, multi-person confrontation at his voting station was particularly disorienting, threatening, and difficult for him to process due to his hearing impairment.

36. Plaintiff suffers from diagnosed medical anxiety and is a heart attack survivor with a pre-existing coronary condition. The physical confrontation at the voting station directly and severely aggravated these pre-existing medical conditions.

37. The following staff members were present in the polling place at the time of the incident, as identified through a Sunshine Law response dated April 29, 2025, from Defendant Folsom: staff members Linda Cansler, Merry Starkey, Kylie Doublin, Robin Steidley, and Hannah George; and poll workers Belinda Frazier, LaRita Pope, and Carolyn Fletcher.

38. Defendant LaRita Pope is believed to be one of the poll workers identified above -- Belinda Frazier, LaRita Pope, or Carolyn Fletcher -- whose true identity is to be determined through discovery, including comparison of the video evidence to personnel records and depositions.

39. Defendant Cansler attended the annual election authority training conducted September 3 through September 6, 2024, at the Sheraton Westport hotel in St. Louis, Missouri -- fifty-five days before the incident.

40. This training was conducted by Chrissy Peters, Director of Election Integrity at the Missouri Secretary of State's office.

41. The training covered proper election conduct, voter rights, and the duties of election authorities and poll workers under Missouri and federal law.

42. Defendant Cansler was trained on proper election conduct by the same individual -- Chrissy Peters -- who subsequently confirmed that Plaintiff's voting rights were violated during the October 31, 2024 incident. Defendant Cansler cannot claim ignorance of the legal requirements she violated.

**B. Immediate Aftermath -- October 31, 2024**

43. Immediately following the incident, Plaintiff attempted to report what had occurred to the Laclede County Sheriff's office. Plaintiff's complaint was dismissed without investigation or documentation.

44. Plaintiff then telephoned the Laclede County Clerk's office to report the incident. Rather than acknowledging the complaint or initiating any corrective action, Defendant Cansler questioned Plaintiff about his use of a cellular telephone at the polling place, deflecting from the substance of the complaint.

45. On October 31, 2024 -- the same day as the incident -- Plaintiff contacted the Missouri Secretary of State's Division of Election Integrity to report the interference with his voting rights.

46. The Division of Election Integrity reviewed Plaintiff's report and confirmed that Plaintiff's rights as a voter had been violated.

47. The Secretary of State's office informed Plaintiff that it had contacted Defendant Cansler's office regarding the complaint.

48. Upon information and belief, the Secretary of State's office did in fact contact Defendant Cansler's office about Plaintiff's complaint on or about October 31, 2024.

49. Defendant Cansler subsequently denied having been contacted by the Secretary of State's office about Plaintiff's complaint. This denial was false, as confirmed by the Secretary of State's office.

50. Defendant Cansler's false denial of contact from the Secretary of State's office constituted the first act in a pattern of dishonesty and obstruction designed to minimize and conceal the voting rights violations that occurred on October 31, 2024.

**C. Formal Complaints Filed**

51. On November 18, 2024, Plaintiff contacted the Missouri Voter Protection Coalition to report the incident.

52. On November 20, 2024, Plaintiff filed a formal complaint with the Missouri Secretary of State's Elections Integrity Unit. Chrissy Peters, Director of Election Integrity, was personally informed of the complaint.

53. On November 21, 2024, Plaintiff submitted a complaint to the United States Department of Justice, Civil Rights Division, via email to Don.Ledford@usdoj.gov, reporting the voter intimidation and obstruction.

54. On December 26, 2024, Plaintiff submitted a complaint through the DOJ Civil Rights Reporting Portal, which was assigned Record Number 551116-PCR.

55. On April 29, 2025, Plaintiff filed a formal complaint with the Missouri Attorney General's Sunshine Request Unit, documenting Defendant Cansler's failure to respond to Sunshine Law requests within the statutory three-day deadline, her false denial of receiving the request, and her false denial of being contacted by the Secretary of State's office.

56. On April 29, 2025, Plaintiff filed a formal complaint with the City of Lebanon, addressed to City Administrator Troy Schulte and Mayor Carr, with copies to the Missouri Attorney General and Secretary of State, requesting an internal review of Defendant Cansler's conduct.

57. On April 29, 2025, Plaintiff filed a formal voter intimidation complaint with the Secretary of State's Elections Division at Elections-1@sos.mo.gov. The Secretary of State's office responded on April 30, 2025, requesting a signed complaint form, which Plaintiff submitted with supporting evidence.

58. On April 30, 2025, Plaintiff executed a sworn and signed Elections Complaint Form directed to the Missouri Secretary of State, citing Election Judge Misconduct under Missouri Revised Statute Section 115.637(18) and voter intimidation in violation of 52 United States Code Section 10101.

59. On the signed complaint form, Plaintiff indicated that complaints had also been filed with or directed to the Missouri Attorney General's Office, the Missouri Ethics Commission, the Local Election Authority, and Local Law Enforcement.

60. Despite the number and breadth of these complaints to multiple state and federal agencies, no agency imposed any corrective action, discipline, or accountability upon Defendants Cansler or LaRita Pope for their conduct on October 31, 2024.

**D. Evidence Destruction and Records Obstruction**

61. On December 27, 2024, Plaintiff visited the Laclede County Clerk's office in person for the purpose of submitting a request for surveillance footage from the October 31, 2024 incident pursuant to the Missouri Sunshine Law, Revised Statutes of Missouri Sections 610.010 et seq. Plaintiff's visit was documented by photographs and video.

62. When Plaintiff presented his Sunshine Law request, Defendant Cansler did not know how to process it. The processing of public records requests is a core statutory duty of the office of County Clerk under Missouri law.

63. Defendant Cansler informed Plaintiff that the surveillance footage from the polling place had already been deleted from the recording system's memory prior to December 27, 2024.

64. The Laclede County Government Building, which served as the early voting location, was equipped with surveillance cameras that recorded activity in the polling area on October 31, 2024.

65. The surveillance footage, had it been preserved, would have captured the conduct of Defendants Cansler and LaRita Pope as described in paragraphs 28 through 31 above and would have constituted material evidence of the voting rights violations at issue in this action.

66. The November 5, 2024 General Election was a federal election. Under 52 United States Code Section 20701, all records and papers that come into the possession of election officers relating to any application, registration, payment of poll tax, or other act requisite to voting in any election at which candidates for federal office are voted for must be retained and preserved for a period of twenty-two months from the date of the election.

67. The surveillance footage from the Laclede County Government Building polling location constituted an election-related record subject to the twenty-two-month retention requirement of 52 United States Code Section 20701.

68. The footage was destroyed approximately two weeks after the October 31, 2024 early voting session -- approximately fifty-seven days after the November 5, 2024 federal election and approximately twenty-one months short of the required twenty-two-month retention period.

69. Plaintiff's complaint was raised on October 31, 2024 itself -- the same day the events on the surveillance footage occurred. The existence of a formal complaint created an independent legal hold obligation requiring preservation of all evidence relevant to the complaint.

70. The Missouri Secretary of State's office contacted Defendant Cansler's office about the complaint, further reinforcing the duty to preserve all evidence relating to the incident.

71. When Plaintiff inquired with the Laclede County Sheriff's office about the surveillance footage, the Sheriff's office stated that video recordings were retained for only two weeks. No written records retention policy governing surveillance footage existed.

72. In responding to Plaintiff's Sunshine Law request, Defendant Cansler sent her written response to the email address "dmansr@gmail.co" instead of Plaintiff's correct email address, "dmansr@gmail.com." Whether this was deliberate sabotage or gross negligence, the error materially delayed Plaintiff's access to the responsive information.

73. On or about April 29, 2025, the Missouri Attorney General's office forwarded Plaintiff's Sunshine Law complaint to Defendant Amy Folsom, in her capacity as Laclede County Prosecuting Attorney.

74. In her response, Defendant Folsom provided the names of staff present on October 31, 2024, but confirmed that the surveillance video and audio "did not exist by December 27, 2024." Defendant Folsom accepted the destruction of this federally protected

evidence without initiating any investigation into the circumstances of its deletion or the absence of any records retention policy.

**E. Defendant Folsom's Fraudulent Delay -- April 2025 Through November 2025**

75. Beginning in approximately April 2025, Defendant Folsom initiated ongoing communications with Plaintiff under the subject line "Follow-Up and Request for Independent Investigation."

76. Over the ensuing months, Defendant Folsom and Plaintiff exchanged seventeen or more emails in this thread, during which Defendant Folsom represented that she was actively working to address Plaintiff's complaints and investigate the incident.

77. In or about July 2025, Defendant Folsom represented to Plaintiff that she was "running down details" regarding the surveillance video retention practices at the Laclede County Government Building.

78. Defendant Folsom emailed the Laclede County Sheriff, who was on vacation at the time, and a bailiff, who never responded to her inquiry.

79. When informed that the surveillance video was retained for only two weeks, Defendant Folsom stated that she felt "it might be more than that" but took no further action to investigate the matter or establish the actual retention period.

80. Defendant Folsom never produced any answers, findings, or conclusions regarding the video retention issue despite representing over a period of months that she was investigating it.

81. On July 28, 2025, Defendant Folsom asked Plaintiff, during a meeting at her office, to assist her in rewriting the County's public records policy, stating that the County did not have one and that she did not know how to proceed. Plaintiff, acting in good faith and in reliance on the cooperative process, agreed and sent Defendant Folsom a comprehensive draft Laclede County Public Records Policy that Plaintiff had personally researched and prepared at Folsom's request. The draft cited the Missouri Sunshine Law, the Local Records Law, federal

and state election retention statutes, and best practices adopted by Taney, Greene, Boone, and St. Louis counties.

82. On August 10, 2025, Defendant Folsom responded to Plaintiff's records policy draft with apparent enthusiasm, stating: "I read it and made notes. Wow." Defendant Folsom scheduled meetings with Plaintiff to discuss the draft, stating she needed to verify the statute citations contained therein.

83. This response maintained Plaintiff's engagement in the process and reinforced his belief that Defendant Folsom was acting in good faith to address his complaints and implement corrective measures.

84. Between August and September 2025, Defendant Folsom scheduled and held multiple meetings with Plaintiff regarding his complaints and the proposed records policy.

85. On September 16, 2025, Plaintiff sent an email to Defendant Folsom in which he expressly referenced "the statute of limitations deadline related to the assault and battery incident involving County Clerk Linda Cansler."

86. Plaintiff's September 16, 2025 email demonstrated that he was aware of the approaching limitations deadline but was relying on the cooperative process with Defendant Folsom to produce accountability for the October 31, 2024 incident.

87. On September 18, 2025, Defendant Folsom scheduled yet another meeting with Plaintiff for September 25, 2025 -- continuing the pattern of delay that consumed the limitations period while maintaining the appearance of good faith. The two-year statute of limitations for assault and battery under RSMo Section 516.140 was set to expire on October 31, 2026.

88. At no point during the months-long cooperative process did the cooperation produce any tangible results. No records retention policies were adopted by Laclede County. No corrective action was taken against Defendant Cansler. No accountability was imposed for the October 31, 2024 incident. No changes were made to election administration procedures.

89. The policies that Defendant Folsom represented she was working to develop and implement did not exist prior to Plaintiff's advocacy and were never adopted during or after the cooperative process.

90. On November 2, 2025, Plaintiff sent a formal communication titled "Request for Apology and Compliance Actions re: 2024 Election Incident and Records Failures" to both Defendant Folsom and Defendant Cansler.

91. In this communication, Plaintiff stated that he "left our last meeting disappointed, as I felt dismissed and that my concerns were no longer being taken seriously."

92. This statement reflects that by November 2025, Plaintiff had recognized that the cooperative process had failed to produce any meaningful results despite months of engagement.

93. Defendant Cansler did not respond to the request for an apology. At no point has Defendant Cansler acknowledged, apologized for, or accepted responsibility for her conduct on October 31, 2024.

94. On November 3, 2025, Defendant Folsom responded to Plaintiff's request by stating that compliance with the records-related requests would "take more than three days" -- further delaying any action.

95. In total, Defendant Folsom maintained the appearance of cooperative engagement with Plaintiff from approximately April 2025 through at least November 2025 -- a period of approximately seven months -- while producing no substantive results.

96. During this seven-month period, Defendant Folsom consumed more than half of the remaining limitations period for Plaintiff's state law assault and battery claims (which expire October 31, 2026 under RSMo Section 516.140's two-year statute). But for Folsom's fraudulent cooperation scheme, Plaintiff would have filed his state claims during this period. The scheme was designed to delay and ultimately prevent filing, and absent the filing of this federal action, would have succeeded in running out the remaining time.

97. The pattern of Defendant Folsom's conduct -- initiating communications, scheduling recurring meetings, expressing enthusiasm for Plaintiff's work product, claiming to

investigate while producing no findings, and scheduling meetings during the final weeks of the limitations period -- constitutes a course of conduct designed to consume the limitations period while maintaining the appearance of good faith.

**F. The Conflict of Interest**

98. At all times relevant to the events described in Section E above, Defendant Amy Folsom served as the duly elected Prosecuting Attorney of Laclede County, Missouri.

99. As Laclede County Prosecuting Attorney, Defendant Folsom was the legal representative and advisor to the County of Laclede, including its officers and employees in their official capacities.

100. Defendant Folsom simultaneously purported to assist Plaintiff in addressing his complaints against Defendant Cansler -- a Laclede County official whom Defendant Folsom was duty-bound to represent and protect from liability.

101. Defendant Folsom had an inherent and undisclosed conflict of interest: she owed a duty of loyalty and legal representation to Laclede County and its officials, while simultaneously holding herself out to Plaintiff as a cooperative partner working to address his grievances against those same county officials.

102. At no point during the seven-month cooperative process did Defendant Folsom disclose this conflict of interest to Plaintiff.

103. At no point did Defendant Folsom advise Plaintiff to seek independent legal counsel to protect his interests, despite her knowledge as a licensed attorney that Plaintiff's legal rights were at stake and that limitations periods were running.

104. At no point did Defendant Folsom advise Plaintiff to file his state law claims while engaged in the cooperation process, despite Plaintiff's own September 16, 2025 email expressly referencing the limitations deadline -- and despite Defendant Folsom's professional obligation as an officer of the court and her personal knowledge of the applicable limitations

periods. Instead, Folsom continued scheduling meetings and maintaining the pretense of cooperative resolution, consuming critical time within the two-year limitations period.

105. Defendant Folsom affirmatively misrepresented the applicable statute of limitations to Plaintiff, telling him it was one year when the actual limitations period for assault and battery under RSMo Section 516.140 is two years. This false statement by a licensed attorney was calculated to create a sense of urgency that would keep Plaintiff engaged in the sham cooperation process — believing his only alternative was to sue immediately — rather than taking time to retain counsel and file independently. This misrepresentation constitutes an additional act of fraud and an independent basis for equitable tolling.

## COUNTS

## COUNT I

## DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF STATE LAW -- 42 U.S.C. SECTION 1983

**(Against All Defendants)**

106. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

107. At all times relevant to this Complaint, Defendants Cansler and LaRita Pope acted under color of state law in their capacities as Laclede County election officials and poll workers. Defendant Folsom acted under color of state law in her capacity as Laclede County Prosecuting Attorney. Defendant Laclede County is a political subdivision of the State of Missouri.

108. Defendants Cansler and LaRita Pope deprived Plaintiff of rights, privileges, and immunities secured by the United States Constitution, including: (a) the right to vote, as protected by the First and Fourteenth Amendments; (b) the right to substantive due process under the Fourteenth Amendment; and (c) the right to equal protection of the laws under the Fourteenth Amendment.

109. Specifically, Defendants Cansler and LaRita Pope physically obstructed Plaintiff's ballot, issued verbal commands directing Plaintiff to stop voting, positioned themselves so as to observe Plaintiff's ballot selections without authorization, and intimidated Plaintiff while he was engaged in the act of casting his vote -- all in violation of clearly established constitutional rights.

110. Defendant Folsom deprived Plaintiff of his constitutional right of access to the courts under the First and Fourteenth Amendments by engaging in a fraudulent scheme of sham cooperation designed to consume the statute of limitations on Plaintiff's state-law claims.

111. Defendant Laclede County is liable under Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978), because the deprivations of Plaintiff's constitutional rights resulted from official County policy. Defendant Cansler, as County Clerk and chief Election Authority, is the final policymaker for election administration within Laclede County. Her actions and decisions constitute official County policy.

112. Alternatively, Defendant Laclede County is liable for its deliberate indifference to the need for adequate training of its election officials and poll workers in the areas of voter rights, election law, disability accommodation, and public records law. The need for Defendant Cansler to undergo post-incident training is direct evidence that no adequate training existed before the October 31, 2024 incident.

113. The deprivations described herein were intentional, not merely negligent. They were committed with reckless and callous disregard for Plaintiff's clearly established constitutional rights.

114. As a direct and proximate result of the deprivations described herein, Plaintiff has suffered compensatory damages including but not limited to emotional distress, aggravation of pre-existing medical conditions, loss of legal claims, and deprivation of his fundamental right to vote free from intimidation.

115. The conduct of Defendants Cansler, Folsom, and LaRita Pope was intentional and committed with reckless or callous disregard for Plaintiff's constitutional rights, warranting an

award of punitive damages against each individual Defendant pursuant to Smith v. Wade, 461 U.S. 30, 56 (1983).

## COUNT II

## VIOLATION OF THE RIGHT TO VOTE -- FIRST AND FOURTEENTH AMENDMENTS (VIA 42 U.S.C. SECTION 1983)

## (Against Defendants Cansler, LaRita Pope, and Laclede County)

116. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

117. The right to vote is a fundamental right protected by the First and Fourteenth Amendments to the United States Constitution. Voting is protected political expression under the First Amendment. The right to vote is a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment. The right to vote free from disparate treatment is protected by the Equal Protection Clause of the Fourteenth Amendment. Harper v. Virginia Board of Elections, 383 U.S. 663, 667 (1966); Reynolds v. Sims, 377 U.S. 533, 561-62 (1964).

118. Defendants Cansler and LaRita Pope, acting under color of state law, violated Plaintiff's fundamental right to vote by: (a) physically obstructing Plaintiff's view of his ballot while he was actively voting; (b) issuing verbal commands directing Plaintiff to stop voting; (c) positioning themselves beside and behind Plaintiff so as to observe his ballot selections without authorization; and (d) creating a coercive and intimidating environment at Plaintiff's voting station through a multi-person confrontation.

119. Plaintiff was singled out and treated differently from other voters present at the polling location on October 31, 2024. No other voter was subjected to the same confrontation, obstruction, and intimidation directed at Plaintiff. This disparate treatment violated Plaintiff's right to equal protection of the laws under the Fourteenth Amendment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (class-of-one equal protection claim where plaintiff has been "intentionally treated differently from others similarly situated and...there is no

rational basis for the difference in treatment"); see also Bush v. Gore, 531 U.S. 98 (2000) (per curiam). Engquist v. Oregon Department of Agriculture, 553 U.S. 591 (2008), limits class-of-one claims in the public-employment context but does not extend to voting or polling-place encounters; the regulatory context here parallels Olech.

120. The right to vote without interference by election officials is clearly established. No reasonable election official would believe that physically obstructing a voter's ballot, commanding a voter to stop voting, and surrounding a voter at his voting station was lawful.

121. As a direct and proximate result of Defendants' violation of his right to vote, Plaintiff suffered emotional distress, aggravation of pre-existing medical conditions, and deprivation of his fundamental right to cast his ballot free from intimidation and obstruction.

## COUNT III

## VOTER INTIMIDATION -- 52 U.S.C. SECTION 10307(b) (VOTING RIGHTS ACT OF 1965)

**(Against Defendants Cansler, LaRita Pope, and Laclede County)**

122. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

123. Under 52 U.S.C. Section 10307(b), "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote."

124. Under 52 U.S.C. Section 10307(b), no person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or for urging or aiding any person to vote or attempt to vote.

125. Plaintiff was engaged in the act of voting when Defendants Cansler and LaRita Pope, acting under color of state law as election officials, accosted Plaintiff at his voting station,

physically obstructed his ballot, commanded him to stop voting, and stationed themselves so as to observe his ballot selections.

126. The combined actions of Defendants Cansler and LaRita Pope constituted intimidation and coercion of Plaintiff in connection with his exercise of the right to vote, in violation of 52 U.S.C. Section 10307(b).

127. The Voting Rights Act of 1965 provides a private right of action for voter intimidation. The text of Section 11(b) (52 U.S.C. § 10307(b)) speaks in classic individual-rights terms: "[n]o person...shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote." That language satisfies the rights-creating template of Gonzaga University v. Doe, 536 U.S. 273, 283-84 (2002). See National Coalition on Black Civic Participation v. Wohl, 498 F. Supp. 3d 457, 476-78 (S.D.N.Y. 2020) (elements of § 11(b) intimidation claim); see also Morse v. Republican Party of Virginia, 517 U.S. 186 (1996) (private enforcement of VRA). Plaintiff pleads voter intimidation in the alternative under (a) the implied private right of action in 52 U.S.C. § 10307(b) directly; (b) 42 U.S.C. § 1983, with § 10307(b) supplying the federal right; and (c) 42 U.S.C. § 1985(3)'s support-or-advocacy clause (Count VI). Plaintiff acknowledges that Arkansas State Conference NAACP v. Arkansas Board of Apportionment, 86 F.4th 1204 (8th Cir. 2023), held no implied private right under VRA § 2, and Turtle Mountain Band of Chippewa Indians v. Howe (8th Cir. May 2025) extended that holding to § 1983, but Turtle Mountain has been stayed by the United States Supreme Court (July 24, 2025) and the question of § 10307(b)'s private enforceability is unsettled in this Circuit. Plaintiff's alternative pleading preserves the claim under each available theory.

128. As a direct and proximate result of Defendants' voter intimidation, Plaintiff suffered emotional distress, aggravation of pre-existing medical conditions, and interference with his fundamental right to vote.

## COUNT IV

## OBSTRUCTION OF ACCESS TO PUBLIC RECORDS -- MISSOURI SUNSHINE LAW (RSMo SECTIONS 610.010 ET SEQ.)

**(Against Defendant Cansler and Defendant Laclede County)**

**(Supplemental Jurisdiction, 28 U.S.C. Section 1367)**

129. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

130. The Missouri Sunshine Law, RSMo Sections 610.010 et seq., requires public governmental bodies and their officers to make public records available for inspection and copying upon request, and to respond to requests within three business days. RSMo Section 610.023.

131. Defendant Cansler, as County Clerk, is the statutory custodian of records for Laclede County, and the processing of public records requests is a core duty of her office under Missouri law.

132. On December 27, 2024, Plaintiff submitted a request for surveillance footage from the October 31, 2024 incident pursuant to the Missouri Sunshine Law. Defendant Cansler did not know how to process the request -- a fundamental incompetence in a legally mandated function of her office.

133. Defendant Cansler informed Plaintiff that the surveillance footage had already been destroyed, thereby depriving Plaintiff of the requested public record.

134. Defendant Cansler sent her written response to Plaintiff's Sunshine Law request to the email address "dmansr@gmail.co" instead of Plaintiff's correct email address, "dmansr@gmail.com," materially delaying Plaintiff's access to the responsive information.

135. Defendant Cansler failed to respond to Plaintiff's Sunshine Law request within the three-business-day deadline required by RSMo Section 610.023.

136. Defendant Cansler falsely denied receiving Plaintiff's Sunshine Law request and falsely denied having been contacted by the Missouri Secretary of State's office about Plaintiff's complaint.

137. Defendant Cansler's conduct constitutes knowing violations of the Missouri Sunshine Law subject to civil penalties of not less than one thousand dollars and not more than five thousand dollars per violation under RSMo Section 610.027.3. To the extent Defendant Cansler's pattern of false denials, mis-addressed responses, and obstruction of access demonstrates purposeful violation, additional civil penalties of up to five thousand dollars per violation, plus reasonable attorney's fees and costs, are available under RSMo Section 610.027.4. Plaintiff pleads both knowing and purposeful violations in the alternative.

138. As a direct and proximate result of Defendant Cansler's obstruction of Plaintiff's access to public records, Plaintiff was deprived of information to which he was legally entitled, suffered material delay in obtaining responsive records, and was impeded in his efforts to document and seek accountability for the October 31, 2024 incident.

## COUNT V

## FRAUD AND FRAUDULENT CONCEALMENT

**(Against Defendant Folsom)**

**(Supplemental Jurisdiction, 28 U.S.C. Section 1367)**

139. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

140. Beginning in approximately April 2025 and continuing through at least November 2025, Defendant Folsom engaged in a deliberate scheme of fraud and fraudulent concealment designed to deprive Plaintiff of his ability to seek timely legal redress for the October 31, 2024 voter intimidation incident. Under Missouri law, fraud requires nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) the speaker's intent that the representation be acted upon by the hearer

in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. Renaissance Leasing, LLC v. Vermeer Manufacturing Co., 322 S.W.3d 112, 131-32 (Mo. banc 2010). Plaintiff pleads each element with the particularity required by Federal Rule of Civil Procedure 9(b) in the paragraphs that follow.

141. Defendant Folsom made affirmative representations to Plaintiff that she was actively working to address his complaints, investigate the incident, and implement corrective policies for Laclede County. These representations were false. Defendant Folsom never intended to produce any substantive results from the cooperative process.

142. Defendant Folsom's false representations were material. They induced Plaintiff to continue participating in the cooperative process rather than filing suit during the applicable statute of limitations period for his state-law claims.

143. Defendant Folsom knew her representations were false. As the County's Prosecuting Attorney and a licensed attorney, Folsom knew that the cooperative process would not produce accountability for Defendant Cansler's conduct and that its true purpose was to consume the limitations period. The policies Folsom represented she was working to develop and implement did not exist prior to Plaintiff's advocacy and were never adopted.

144. Defendant Folsom intended to induce Plaintiff's reliance on her false representations. The seven-month cooperative process was calibrated to consume the statute of limitations on Plaintiff's state-law assault and battery claims.

145. Plaintiff reasonably relied on Defendant Folsom's representations. Folsom held the office of Prosecuting Attorney, a position of trust and authority. She was a licensed attorney. She expressed enthusiasm for Plaintiff's work product. She scheduled recurring meetings. Plaintiff had no reason to believe that a sworn officer of the court and elected official was engaging in deliberate deception.

146. As a direct and proximate result of Defendant Folsom's fraud, Plaintiff suffered the loss of his state-law assault and battery claims against Defendant Cansler, the running of which was substantially consumed by the fraudulent cooperative process and which would have been lost entirely but for the filing of this action. Plaintiff also suffered the loss of approximately seven months of time and effort invested in good faith in the cooperative process, including the preparation of a comprehensive public records policy that was never adopted.

147. Defendant Folsom's fraud also constitutes fraudulent concealment within the meaning of RSMo Section 516.280, which provides that when any defendant by fraud conceals the cause of action from the plaintiff's knowledge, the statute of limitations shall be deemed to commence from the time of discovery. Defendant Folsom's fraudulent concealment equitably tolls the statute of limitations on all claims arising from the October 31, 2024 incident and its aftermath. See RSMo § 516.280; Smile v. Lawson, 435 S.W.2d 325, 328-29 (Mo. 1968) (affirmative concealment by defendant tolls limitations); Powel v. Chaminade College Preparatory, Inc., 197 S.W.3d 576, 582-84 (Mo. banc 2006) (applying the 'capable of ascertainment' accrual and tolling standard); see also Holmberg v. Armbrecht, 327 U.S. 392 (1946) (federal-equitable-rights concealment tolling).

## COUNT VI

## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS -- 42 U.S.C. SECTIONS 1985(3) AND 1985(2)

## (Against All Defendants)

148. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

### Section 1985(3) -- Support or Advocacy Clause

149. The Support or Advocacy Clause of 42 U.S.C. § 1985(3) provides a cause of action against any conspiracy "to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in

favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy." 42 U.S.C. § 1985(3). Two or more of the Defendants -- specifically, Defendants Cansler, LaRita Pope, and other election workers -- conspired to use intimidation and coercion to prevent Plaintiff, a lawfully entitled voter, from giving his support or advocacy in a legal manner toward the election of lawfully qualified persons as President of the United States, United States Senator, and United States Representative on the November 5, 2024 General Election ballot.

150. The Support or Advocacy Clause of § 1985(3) does not require class-based discriminatory animus. Kush v. Rutledge, 460 U.S. 719, 724-26 (1983) (animus requirement of Griffin v. Breckenridge applies only to the Equal Protection clause of § 1985(3), not to the Support-or-Advocacy or § 1985(2)-Clause-1 clauses).

151. In furtherance of the conspiracy, Defendants Cansler and LaRita Pope committed overt acts including physically obstructing Plaintiff's ballot, issuing verbal commands to stop voting, and surrounding Plaintiff at his voting station.

152. As a direct and proximate result of this conspiracy, Plaintiff was injured in his person and property, including interference with his right to vote, emotional distress, and aggravation of pre-existing medical conditions.

**Section 1985(2) -- Obstruction of Justice**

153. Defendants Folsom and Cansler conspired to deter Plaintiff from pursuing his federal-court claims through intimidation and deception. Plaintiff's claim arises under the first clause of 42 U.S.C. § 1985(2) -- the federal-court-access clause -- which under Kush v. Rutledge, 460 U.S. 719, 724-26 (1983), requires no class-based discriminatory animus. The conduct alleged in Section E above (Defendant Folsom's seven-month fraudulent cooperative process) and Section D above (Defendant Cansler's evidence destruction and records obstruction) constituted deliberate and coordinated intimidation and deception of Plaintiff designed to prevent

him from commencing this very action in federal court while material limitations periods were running.

154. The conspiracy progressed through multiple phases: (a) Phase 1 -- Defendants Cansler, LaRita Pope, and other election workers accosted Plaintiff at the polling place and subsequently denied the incident occurred; (b) Phase 2 -- Defendant Folsom engaged Plaintiff in a fraudulent cooperation process designed to prevent him from seeking legal redress while the statute of limitations expired; and (c) Phase 3 -- Defendants destroyed evidence, obstructed public records, and dismissed complaints in an ongoing effort to conceal the original violations.

155. The coordinated denial of the incident, destruction of surveillance footage, obstruction of public records requests, sham cooperative process, and dismissal of complaints all constitute overt acts in furtherance of the conspiracy.

156. As a direct and proximate result of this conspiracy, Plaintiff was deprived of his right to seek legal redress, lost viable legal claims, and suffered emotional distress and aggravation of pre-existing medical conditions.

## **COUNT VII**

## OBSTRUCTION OF JUSTICE AND DENIAL OF ACCESS TO COURTS -- FOURTEENTH AMENDMENT (VIA 42 U.S.C. SECTION 1983)

**(Against Defendant Folsom)**

157. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

158. The right of access to the courts is a fundamental constitutional right secured by the First and Fourteenth Amendments to the United States Constitution. See Christopher v. Harbury, 536 U.S. 403, 415-16 (2002); Bounds v. Smith, 430 U.S. 817 (1977), as limited by Lewis v. Casey, 518 U.S. 343, 349-51 (1996) (actual-injury requirement for access-to-courts claims).

159. Defendant Folsom, acting under color of state law in her capacity as Laclede County Prosecuting Attorney, deliberately obstructed Plaintiff's ability to pursue legal remedies for the October 31, 2024 incident.

160. Defendant Folsom's fraudulent cooperative process was specifically designed to consume the statute of limitations period on Plaintiff's state-law claims. Folsom initiated communications, scheduled recurring meetings, expressed enthusiasm for Plaintiff's work product, claimed to be investigating while producing no findings, and scheduled meetings during the final weeks of the limitations period.

161. Plaintiff had a viable state-law assault and battery claim against Defendant Cansler arising from the October 31, 2024 incident. This claim was lost as a direct result of Defendant Folsom's fraudulent delay.

162. Defendant Folsom's conduct constitutes a deprivation of Plaintiff's constitutional right of access to the courts under color of state law, actionable under 42 U.S.C. Section 1983. See Christopher v. Harbury, 536 U.S. 403 (2002) (recognizing backward-looking access-to-courts claims where government action causes loss of an underlying claim); Bell v. City of Milwaukee, 746 F.2d 1205, 1261 (7th Cir. 1984) (assumed correct in Christopher v. Harbury, 536 U.S. at 414 n.11) (cover-up constituting denial of access to courts); Ryland v. Shapiro, 708 F.2d 967, 974-75 (5th Cir. 1983) (recognizing property interest in lost cause of action).

163. As a direct and proximate result of Defendant Folsom's obstruction of Plaintiff's access to the courts, Plaintiff's ability to timely pursue his state-law assault and battery claim was materially obstructed, suffered the loss of approximately seven months of time and effort invested in the fraudulent cooperative process, and suffered emotional distress.

164. Count VII is pleaded in the alternative to Count XI(a) (Missouri assault and battery). To the extent the assault and battery claim is preserved by equitable tolling under RSMo § 516.280 (see ¶ 144 above), Plaintiff sustains an Article-III injury under the second branch of Christopher v. Harbury, 536 U.S. at 414, in the form of seven months of fraudulently consumed time, lost evidence, and the impairment of his "opportunity to seek some particular order of

relief" -- itself a cognizable injury. To the extent the assault and battery claim is time-barred, Plaintiff has lost the underlying claim entirely and sustains a backward-looking injury under the first branch of Harbury.

**COUNT VIII**

FEDERAL DUTY OF PRESERVATION AND ADVERSE INFERENCE -- 52 U.S.C. § 20701

**(Against Defendants Cansler and Laclede County)**

165. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

166. Count VIII does not assert a freestanding civil cause of action under 52 U.S.C. § 20701. Plaintiff acknowledges that § 20701 is enforced criminally by the United States Attorney General under 52 U.S.C. § 20704 and does not contain rights-creating language sufficient to imply a private civil cause of action under Alexander v. Sandoval, 532 U.S. 275 (2001), or Gonzaga University v. Doe, 536 U.S. 273 (2002). Rather, Plaintiff invokes § 20701 as the source of a federal duty of preservation -- specifically, the twenty-two-month retention requirement for election records -- the breach of which establishes (a) the federal-court spoliation predicate for the adverse-inference instruction sought in Prayer ¶ 9, see Stevenson v. Union Pacific Railroad Co., 354 F.3d 739, 746-48 (8th Cir. 2004); Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 460-61 (8th Cir. 2013); and (b) deliberate indifference to clearly established federal law for purposes of the Monell failure-to-train claim in Count XII. Under 52 U.S.C. § 20701, all records and papers which come into the possession of any officer of election relating to any application, registration, payment of poll tax, or other act requisite to voting in any election at which candidates for the office of President, Vice President, presidential elector, Member of the Senate, or Member of the House of Representatives are voted for, shall be retained and preserved by such officer for a period of twenty-two months from the date of the election to which the records relate.

167. The November 5, 2024 General Election was a federal election that included candidates for President of the United States, United States Senator, and United States Representative.

168. The surveillance footage from the Laclede County Government Building, which served as the early voting polling location, constituted an election-related record subject to the twenty-two-month retention requirement of 52 U.S.C. Section 20701.

169. Defendant Cansler, as County Clerk and Election Authority, was the officer of election responsible for the retention and preservation of election records, including the surveillance footage.

170. The surveillance footage was destroyed approximately two weeks after the October 31, 2024 early voting session -- approximately fifty-seven days after the November 5, 2024 federal election and approximately twenty-one months short of the twenty-two-month retention period required by federal law.

171. A formal complaint about the events captured on the surveillance footage was raised on October 31, 2024, the same day the incident occurred. The existence of this complaint created an independent legal hold obligation requiring preservation of all evidence relevant to the complaint.

172. The Missouri Secretary of State's office contacted Defendant Cansler's office about the complaint, further reinforcing the duty to preserve the footage.

173. No written records retention policy governing surveillance footage existed at the Laclede County Government Building. The absence of any retention policy demonstrates deliberate indifference to the federal statutory obligation to preserve election records.

174. The destroyed surveillance footage would have captured the conduct of Defendants Cansler and LaRita Pope as described in this Complaint and would have constituted the single most powerful piece of corroborating evidence of the voting rights violations at issue.

175. Defendant Cansler's destruction of the surveillance footage -- or her failure to prevent its destruction -- constitutes a breach of the federal preservation duty imposed by 52

U.S.C. § 20701, and supplies the predicate for the adverse-inference instruction sought in Prayer ¶ 9 and for the Monell deliberate-indifference theory in Count XII.

176. As a direct and proximate result of the destruction of the surveillance footage, Plaintiff has been deprived of critical, irreplaceable corroborating evidence of the voting rights violations at issue in this action.

177. Plaintiff respectfully requests that the Court instruct the jury that it may draw an adverse inference from the destruction of the surveillance footage -- that is, that the destroyed footage would have supported Plaintiff's account of the October 31, 2024 incident. See Stevenson v. Union Pacific, 354 F.3d 739 (8th Cir. 2004); Hallmark Cards v. Murley, 703 F.3d 456 (8th Cir. 2013).

## COUNT IX

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT -- 42 U.S.C. SECTION 12132 (TITLE II)

### (Against Defendant Laclede County)

178. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

179. Title II of the Americans with Disabilities Act, 42 U.S.C. Section 12132, provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. Title II permits suit only against public entities, not against individuals in their personal or official capacity. Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) (public-entities-only holding); accord Dinkins v. Correctional Medical Services, 743 F.3d 633, 634 (8th Cir. 2014) (per curiam) (reaffirming post-Tennessee v. Lane). Title II validly abrogates Eleventh Amendment immunity for fundamental-rights conduct -- including the right to vote -- under Tennessee v. Lane, 541 U.S. 509, 533-34 (2004), and United States v. Georgia, 546 U.S. 151, 159 (2006). The Eighth

Circuit has held that the duty of effective communication under Title II applies to public entities' interactions with hearing-impaired individuals. Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999); see also 28 C.F.R. § 35.160 (effective-communication regulation).

180. Plaintiff is a qualified individual with a disability within the meaning of the ADA. Plaintiff suffers from partial deafness, diagnosed medical anxiety, and a pre-existing coronary condition as a heart attack survivor. These conditions are substantially limiting and qualify as disabilities under 42 U.S.C. Section 12102.

181. Defendant Laclede County is a public entity subject to Title II of the ADA, 42 U.S.C. Section 12131(1). The administration of elections, including the operation of polling places, is a service, program, or activity of Defendant Laclede County.

182. Plaintiff was subjected to discrimination in the voting process by reason of his disabilities. Specifically: (a) Plaintiff's partial deafness made the multi-person verbal confrontation at his voting station especially disorienting and intimidating, as he was unable to clearly hear or process the commands being issued by multiple election workers in a chaotic environment; (b) election workers made no accommodation whatsoever for Plaintiff's hearing impairment during the confrontation, in violation of 28 C.F.R. Section 35.160 (effective communication requirement); (c) the physical obstruction of Plaintiff's ballot and the surrounding of Plaintiff by multiple workers was particularly threatening to a person with medical anxiety and a coronary condition; and (d) election officials knew or should have known that aggressively confronting a voter with visible signs of distress could trigger a medical emergency.

183. No disability awareness protocols existed at the Laclede County polling location. No accommodations were offered or provided to Plaintiff at any time during or after the October 31, 2024 incident.

184. The prolonged denial, obstruction, and sham cooperative process that followed the incident constituted ongoing discrimination by compounding the psychological harm to a person with anxiety-related disabilities.

185. As a direct and proximate result of Defendant Laclede County's violation of the ADA, Plaintiff suffered emotional distress, aggravation of his pre-existing coronary condition and anxiety disorder, and deprivation of his right to vote in a manner accessible to persons with disabilities.

## COUNT X

## NEGLECT TO PREVENT CONSPIRACY -- 42 U.S.C. SECTION 1986

**(Against Defendant Cansler)**

186. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

187. Under 42 U.S.C. Section 1986, every person who, having knowledge that any of the wrongs conspired to be done and mentioned in Section 1985 are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, shall be liable to the party injured.

188. The one-year limitations period built into 42 U.S.C. § 1986 is equitably tolled by Defendant Folsom's fraudulent concealment of Plaintiff's causes of action from April 2025 through at least November 2025, as set forth in Count V and paragraphs 74 through 103 above. Folsom's seven-month sham cooperative process -- which she knew would not produce accountability -- was calibrated to consume Plaintiff's limitations periods, including the § 1986 one-year clock that ran from October 31, 2024 to October 31, 2025. Plaintiff, reasonably relying on Folsom's representations and on her position of trust as the County Prosecuting Attorney, did not discover the fraud until November 2025 and could not have discovered it through reasonable diligence prior to that time. Federal courts apply the forum state's tolling rules to § 1983 and § 1986 claims, Wallace v. Kato, 549 U.S. 384, 387 (2007), and Missouri's fraudulent-concealment tolling statute, RSMo § 516.280, suspends the running of any limitations period during a defendant's active concealment. See Smile v. Lawson, 435 S.W.2d 325, 328-29 (Mo. 1968);

Powel v. Chaminade College Preparatory, Inc., 197 S.W.3d 576, 582-84 (Mo. banc 2006). Plaintiff filed this Complaint on April 2, 2026, well within the tolled limitations period.

189. Defendant Cansler, as County Clerk and Election Authority, had knowledge that the wrongs described in Count VI -- the intimidation, obstruction, and unauthorized observation of Plaintiff's voting process -- were being committed. Indeed, Defendant Cansler personally participated in and directed the conduct.

190. Defendant Cansler had the power to prevent the poll workers, including Defendant LaRita Pope, from participating in the intimidation and obstruction of Plaintiff's voting process. As Election Authority, Cansler was the supervisor of all election workers present at the polling location.

191. Defendant Cansler neglected and refused to prevent the conspiracy described in Count VI. Rather than stopping the intimidation and obstruction, Cansler directed and participated in it.

192. After the October 31, 2024 incident, Defendant Cansler had knowledge of the ongoing conspiracy to deny, obstruct, destroy evidence, and conceal the voting rights violations, and had the power to prevent the continuation of these acts, but neglected and refused to do so.

193. As a direct and proximate result of Defendant Cansler's neglect and refusal to prevent the conspiracy, Plaintiff suffered the injuries described herein.

## <u>COUNT XI</u>

## MISSOURI STATE TORT CLAIMS

## (Against Defendants Cansler, Folsom, LaRita Pope, and Laclede County)

## (Supplemental Jurisdiction, 28 U.S.C. Section 1367)

194. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

### a. Assault and Battery

195. Under Missouri law, an assault occurs when a defendant commits a positive act that creates a reasonable apprehension of immediate harmful or offensive contact, and the act is intentional. Battery occurs when a defendant makes actual, intentional, harmful or offensive physical contact with another person without that person's consent.

196. On October 31, 2024, Defendant Cansler first yelled at Plaintiff repeatedly from across the room, accosting him while he was voting. When Plaintiff did not respond — because he is partially deaf and could not hear her — Defendant Cansler approached Plaintiff at his voting station and placed her right hand on Plaintiff's left shoulder, making unwanted and unauthorized physical contact with his person. She then placed her hand directly in front of Plaintiff's voting screen. Simultaneously, Defendant LaRita Pope kneeled to Plaintiff's right side and continued to interrupt his voting process. These actions constituted both assault (reasonable apprehension of harmful contact) and battery (actual unauthorized physical contact with Plaintiff's person). The yelling from across the room is captured on Plaintiff's audio recording.

197. The battery by Defendant Cansler — placing her hand on Plaintiff's shoulder without consent — was harmful and offensive. No election official has the legal authority to physically touch a voter engaged in the act of casting a ballot. The physical contact was deliberate, unwanted, and served no legitimate governmental purpose.

198. The number of persons surrounding Plaintiff (three against one), their positions of authority as election officials, and the confined space of the voting area amplified Plaintiff's reasonable apprehension. Defendant LaRita Pope's act of kneeling beside Plaintiff while he was seated at the voting terminal placed her in an aggressively close and intrusive position.

199. The assault and battery were intentional. Defendants Cansler and LaRita Pope deliberately approached Plaintiff, deliberately issued commands, Cansler deliberately placed her hand on Plaintiff's body and in front of his ballot screen, and LaRita Pope deliberately kneeled beside Plaintiff to continue the interruption.

200. To the extent any applicable statute of limitations is asserted as a defense, Plaintiff asserts that the limitations period is equitably tolled by Defendant Folsom's fraudulent

concealment, as set forth in Count V and paragraphs 74 through 103 above. The same equitable-tolling allegation applies with equal force to Count X (§ 1986), the one-year limitations period of which was equitably tolled by Folsom's ongoing fraudulent concealment from April 2025 through at least November 2025, pursuant to RSMo § 516.280, Smile v. Lawson, 435 S.W.2d 325, 328-29 (Mo. 1968), and Powel v. Chaminade College Preparatory, Inc., 197 S.W.3d 576, 582-84 (Mo. banc 2006); see also Holmberg v. Armbrecht, 327 U.S. 392 (1946); and -- for federal-law tolling of § 1983 claims -- under Wallace v. Kato, 549 U.S. 384, 387 (2007) (state tolling rules govern § 1983 claims). Moreover, Defendant Folsom affirmatively misrepresented the applicable limitations period to Plaintiff, telling him it was one year when the actual statute of limitations for assault and battery under RSMo Section 516.140 is two years — a deliberate misstatement by a licensed attorney designed to create urgency that would keep Plaintiff engaged in the sham cooperation process rather than filing suit.

**b. Intentional Infliction of Emotional Distress**

201. Under Missouri law, the tort of intentional infliction of emotional distress requires: (1) intentional or reckless conduct by the defendant; (2) that is extreme and outrageous; (3) that causes (4) severe emotional distress to the plaintiff. K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. banc 1996). Where the alleged distress flows from conduct that itself constitutes another intentional tort, an IIED claim does not lie as a separate cause of action; the claim is subsumed in the underlying tort. Id. Plaintiff therefore anchors his IIED claim in conduct independent of the October 31, 2024 battery -- specifically, the seventeen-month, multi-actor post-incident campaign of denial, evidence destruction, records obstruction, fraud, conflict of interest, and gaslighting described in Sections C through F above.

202. The post-incident conduct on which this Count is anchored was extreme and outrageous, including but not limited to: (a) Defendant Cansler's repeated false denials of having been contacted by the Missouri Secretary of State; (b) the destruction of surveillance footage with knowledge of Plaintiff's contemporaneous formal complaint and the Secretary of State's contact; (c) Defendant Cansler's mis-addressed email response designed to delay Plaintiff's

access to the public-records system; (d) Defendant Folsom's undisclosed conflict of interest, while she purported to assist Plaintiff against the County she represented; (e) Defendant Folsom's fraudulent representations that she was investigating the matter and developing corrective policies; (f) Defendant Folsom's deliberate misstatement of the applicable statute of limitations as one year; (g) Defendant Folsom's deliberate consumption of seven months of the assault and battery limitations period through scheduled meetings she knew would produce no accountability; and (h) the dismissive response to Plaintiff's November 2, 2025 request for apology, sustaining the pattern of ongoing harm. None of this post-incident conduct is subsumed in the polling-place battery, and each component was committed with knowledge of Plaintiff's documented medical conditions: partial deafness, diagnosed medical anxiety, and a pre-existing coronary condition.

203. This conduct was committed by persons in positions of public authority -- a County Clerk, a Prosecuting Attorney, and election workers -- against a citizen who was exercising his most fundamental democratic right. The abuse of governmental authority makes a finding of "extreme and outrageous" more likely under Missouri law.

204. The conduct targeted a person with known or apparent medical vulnerabilities -- partial deafness, medical anxiety, and a coronary condition -- which compounds the outrageousness of Defendants' actions.

205. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress, aggravation of his pre-existing coronary condition and anxiety disorder, and loss of trust in local government and the electoral process.

**c. Abuse of Process**

206. Under Missouri law, abuse of process requires: (1) an illegal, improper, or perverted use of process; (2) an illegal or ulterior purpose; and (3) resulting damage. Schlafly v. Cori, 647 S.W.3d 570, 575 (Mo. banc 2022).

207. Defendant Folsom used the complaint-resolution and cooperative process not to genuinely resolve Plaintiff's complaint but to defeat Plaintiff's ability to bring a legal claim. The

cooperative process was weaponized: its true purpose was to run the statute of limitations, not to implement policy reforms or achieve accountability.

208. The cooperative process produced zero tangible results: no policies were adopted, no accountability was imposed on Defendant Cansler, no records retention practices were changed, and no corrective action was taken. The complete absence of any results, despite seven months of engagement and Plaintiff's comprehensive policy submissions, demonstrates the process was perverted from its ostensible purpose.

209. As a direct and proximate result of Defendant Folsom's abuse of process, Plaintiff suffered the loss of his state-law assault and battery claims, the loss of approximately seven months of time and effort, and emotional distress.

**d. Missouri Civil Conspiracy**

210. Under Missouri law, a civil conspiracy requires: (1) two or more persons; (2) with an unlawful objective; (3) a meeting of the minds on the objective or course of action; (4) one or more unlawful overt acts in furtherance of the conspiracy; and (5) resulting injury to the plaintiff. Western Blue Print Co. v. Roberts, 367 S.W.3d 7, 22 (Mo. banc 2012) (elements of Missouri civil conspiracy).

211. Defendants Cansler, Folsom, LaRita Pope, and other election workers conspired to: (a) intimidate a voter during the act of voting; (b) deny that the incident occurred; (c) destroy evidence of the incident; (d) obstruct Plaintiff's access to public records; and (e) fraudulently delay Plaintiff's pursuit of legal action.

212. The overt acts in furtherance of this conspiracy include, but are not limited to: the physical confrontation on October 31, 2024; Defendant Cansler's false denial of being contacted by the Secretary of State's office; the destruction of surveillance footage; the sending of a Sunshine Law response to an incorrect email address; and Defendant Folsom's seven-month fraudulent cooperative process.

213. The email trail, video evidence, and documented pattern of denial and obstruction demonstrate a meeting of the minds among the Defendants and constitute clear and convincing evidence of the conspiracy.

214. All conspirators are jointly and severally liable for the underlying torts committed in furtherance of the conspiracy.

215. As a direct and proximate result of the conspiracy, Plaintiff suffered all of the injuries described herein.

## COUNT XII

## FAILURE TO TRAIN -- MONELL LIABILITY

## (Against Defendant Laclede County)

216. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

217. Defendant Laclede County had a duty to adequately train its election officials and poll workers in the areas of: (a) proper conduct toward voters at polling locations; (b) voter rights under federal and state law; (c) Sunshine Law obligations, which are a core statutory duty of the County Clerk's office; (d) disability accommodation under the ADA; and (e) federal election records preservation requirements under 52 U.S.C. Section 20701.

218. Defendant Laclede County failed to provide adequate training in each of these areas, and this failure constitutes deliberate indifference to citizens' constitutional and statutory rights. See City of Canton v. Harris, 489 U.S. 378, 388-90 (1989); Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996); Parrish v. Ball, 594 F.3d 993, 997-98 (8th Cir. 2010). Plaintiff's failure-to-train claim rests on a pattern -- documented in the Sunshine Law obstruction, the destruction of federal election records, the absence of any records-retention policy, and Defendant Cansler's documented inability to process public-records requests even after post-incident training -- not a single incident, and therefore is not foreclosed by Connick v. Thompson, 563 U.S. 51 (2011).

219. The need for Defendant Cansler to undergo post-incident training on Sunshine Law obligations is direct evidence that no adequate training existed before the October 31, 2024 incident.

220. Even after receiving post-incident training, Defendant Cansler continued to be unable to properly respond to public records requests, demonstrating that the County's training program itself was inadequate.

221. The failure to train was a moving force behind the constitutional and statutory violations suffered by Plaintiff, including the voter intimidation, the destruction of federal election records, and the obstruction of public records access.

222. As a direct and proximate result of Defendant Laclede County's failure to train, Plaintiff suffered all of the injuries described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Leslie Dennis Mannon respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally where applicable, and award the following relief:

### 1. Declaratory Judgment

A declaration that Defendants violated Plaintiff's rights under the United States Constitution, including his right to vote under the First and Fourteenth Amendments; his right to due process under the Fourteenth Amendment; his right to equal protection under the Fourteenth Amendment; and his right of access to courts under the First and Fourteenth Amendments; and that Defendants violated the Voting Rights Act of 1965, 52 U.S.C. Section 10307(b); the federal election records preservation statute, 52 U.S.C. Section 20701; and the Americans with Disabilities Act, 42 U.S.C. Section 12132.

### 2. Compensatory Damages

Compensatory damages in an amount to be determined at trial, but no less than **One Million Five Hundred Thousand Dollars ($1,500,000.00)**, as follows:

a. **Voting Rights Violation and Polling Place Confrontation -- $250,000.** For the direct interference with Plaintiff's fundamental right to vote, including the physical obstruction of his ballot, verbal commands to stop voting, unauthorized observation of his ballot selections, and the multi-person intimidation at his voting station.

b. **Emotional Distress and Medical Aggravation -- $350,000.** For the emotional distress, aggravation of Plaintiff's pre-existing coronary condition, aggravation of Plaintiff's diagnosed medical anxiety, and the particularly disorienting and threatening nature of the confrontation given Plaintiff's partial deafness. Plaintiff invokes the "eggshell plaintiff" doctrine: Defendants take the victim as they find him. This amount further compensates Plaintiff for the seventeen-plus months of ongoing psychological harm caused by the coordinated denial, gaslighting, and obstruction by public officials, and for Plaintiff's resulting loss of trust in local government and the electoral process.

c. **Damages for Defendant Folsom's Fraudulent Delay and Deception -- $300,000.** For Defendant Folsom's exploitation of her position as Prosecuting Attorney and Plaintiff's trust; for the deliberate misrepresentation of the applicable statute of limitations (telling Plaintiff it was one year when it was actually two years under RSMo Section 516.140); for the approximately seven months of wasted time, effort, and emotional investment in a sham cooperation process that produced zero results; for the work product Plaintiff prepared in good faith, including a comprehensive county Public Records Policy, that was rendered futile by Defendant Folsom's scheme; and for the additional emotional distress caused by the discovery that a trusted public official had been systematically deceiving Plaintiff while purporting to help him.

d. **Sunshine Law Violations and Records Obstruction -- $100,000.** For multiple discrete violations of the Missouri Sunshine Law, RSMo Sections 610.023 and 610.027, including Defendant Cansler's failure to respond to Plaintiff's December 27, 2024 request, the

sending of a Sunshine Law response to an incorrect email address, and the ongoing inability to properly process records requests -- constituting a pattern of deliberate obstruction.

e. **Evidence Destruction and Spoliation -- $200,000.** For the destruction of surveillance footage from the Laclede County Government Building in violation of 52 U.S.C. Section 20701; for the deprivation of the single most powerful piece of corroborating evidence available to Plaintiff; for the destruction occurring despite a formal complaint raised on the day of the incident and despite contact from the Missouri Secretary of State's office; and for the absence of any records retention policy reflecting deliberate indifference to federal law.

f. Disability-Related Harm (via 42 U.S.C. Section 1983) -- $150,000. For the failure to accommodate Plaintiff's partial deafness during the confrontation; for the aggressive conduct directed at a voter with a documented coronary condition and medical anxiety; for the absence of any disability awareness protocols at the polling location; and for the disproportionate impact of Defendants' conduct on a person with Plaintiff's specific disabilities. These damages are sought under Section 1983 for the underlying constitutional violations as they relate to Plaintiff's disabilities, as compensatory emotional distress damages are available under Section 1983 per Carey v. Piphus, 435 U.S. 247, 263-64 (1978) (emotional distress compensable under § 1983 upon proof of actual injury); see also Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308-12 (1986) (no presumed or abstract-value § 1983 damages; actual-injury proof required). Plaintiff also seeks injunctive and declaratory relief under ADA Title II as set forth in Count IX.

g. **Conspiracy and Cover-Up -- $150,000.** For the independent harm caused by the conspiracy spanning multiple actors over seventeen-plus months, including coordinated denial, evidence destruction, fraudulent cooperation, and obstruction of records, which caused harm separate and distinct from the original incident.

**3. Punitive Damages**

Punitive damages against Defendants Cansler, Folsom, and LaRita Pope, individually, in an amount no less than Seven Hundred Fifty Thousand Dollars ($750,000.00) -- specifically, no

less than $250,000 against each individual Defendant -- to punish and deter the willful, intentional, and reckless conduct described herein. Punitive damages are appropriate where conduct is "intentional or committed with reckless or callous disregard" for constitutional rights. Smith v. Wade, 461 U.S. 30, 56 (1983). Punitive damages are not sought against Defendant Laclede County. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

a. **Against Defendant Cansler:** For willful voter intimidation and physical obstruction of Plaintiff's ballot; destruction of surveillance footage in violation of federal law; obstruction of Plaintiff's lawful public records requests; false denial of being contacted by the Secretary of State's office; and persistent refusal to acknowledge, apologize for, or accept responsibility for her conduct.

b. **Against Defendant Folsom:** For deliberate fraud perpetrated upon Plaintiff under color of her office as Prosecuting Attorney; undisclosed conflict of interest; abuse of her position of trust and legal authority; and a seven-month scheme specifically designed to defeat Plaintiff's legal claims.

c. **Against Defendant LaRita Pope:** For direct physical participation in the obstruction of Plaintiff's ballot and intimidation of Plaintiff while he was voting; and for the refusal to identify herself when asked, demonstrating consciousness of wrongdoing.

**4. Injunctive Relief**

A preliminary and permanent injunction requiring Defendant Laclede County to:

a. Implement mandatory voter protection training for all election workers, covering voter rights under federal and state law, prohibited conduct at polling places, and proper procedures for interacting with voters;

b. Establish a formal voter complaint process with independent oversight, so that complaints of voter intimidation and obstruction are not dismissed or ignored;

c. Ensure that the County Clerk's office can fulfill its obligations under the Missouri Sunshine Law, RSMo Sections 610.010 et seq., including the timely processing of public records requests;

d. Implement ADA-compliant disability awareness training for all election workers, covering the rights of voters with disabilities and the duty to provide reasonable accommodations;

e. Establish protocols to protect voters with disabilities from intimidation and to ensure that voters with hearing impairments, medical anxiety, and other conditions receive appropriate accommodations; and

f. Adopt a records retention policy compliant with 52 U.S.C. Section 20701, requiring the preservation of all election-related records, including surveillance footage from polling locations, for a minimum of twenty-two months from the date of the election.

**5. Preliminary and Permanent Injunction Barring Defendant Cansler from Election Administration**

A preliminary and permanent injunction barring Defendant Cansler from serving as Election Authority for Laclede County pending resolution of this action, given: (a) her documented interference with a voter's right to cast a ballot; (b) her inability to perform core statutory duties of her office, including Sunshine Law compliance; (c) her office's destruction of federally protected election records; and (d) her candidacy for re-election to the same office, creating an imminent risk of recurring harm to voters.

**6. Sunshine Law Penalties**

Civil penalties of not less than one thousand dollars and not more than five thousand dollars per violation under RSMo Section 610.027, for each instance of Defendant Cansler's non-compliance with the Missouri Sunshine Law, including but not limited to: (a) failure to respond to Plaintiff's December 27, 2024 request within the three-business-day deadline; (b)

sending the response to an incorrect email address; and (c) ongoing failure to properly process records requests.

**7. Equitable Tolling of State Claims**

A declaration that the state statute of limitations for Plaintiff's assault and battery claims is equitably tolled due to Defendant Folsom's fraudulent concealment, as set forth in this Complaint, thereby preserving those claims, pursuant to RSMo § 516.280, Smile v. Lawson, 435 S.W.2d 325, 328-29 (Mo. 1968), and Powel v. Chaminade College Preparatory, Inc., 197 S.W.3d 576, 582-84 (Mo. banc 2006); and a declaration that the one-year limitations period for 42 U.S.C. § 1986 (Count X) is equitably tolled for the same reason; see also Holmberg v. Armbrecht, 327 U.S. 392 (1946); Wallace v. Kato, 549 U.S. 384, 387 (2007).

**8. Damages for Loss of Legal Claims**

Compensatory damages against Defendant Folsom for the harm caused by her fraudulent delay scheme, including: (a) the seven months of wasted time, effort, and emotional investment in the sham cooperation process; (b) the good-faith work product Plaintiff prepared that was rendered futile; (c) the deliberate misrepresentation of the applicable statute of limitations; (d) the additional emotional distress caused by the discovery that a trusted public official had been deceiving Plaintiff; and (e) to the extent any state-law claims are ultimately time-barred, the full value of those lost claims.

**9. Adverse Inference Instruction**

An instruction to the jury that it may presume that the destroyed surveillance footage from the Laclede County Government Building on October 31, 2024, would have corroborated Plaintiff's account of the incident, due to Defendants' spoliation of evidence in violation of 52 U.S.C. Section 20701 and their duty to preserve evidence after a known complaint.

**10. Referral to Missouri Office of Chief Disciplinary Counsel**

Plaintiff respectfully requests that the Court refer Defendant Amy Folsom's conduct to the Missouri Office of Chief Disciplinary Counsel for investigation of violations of the Missouri Rules of Professional Conduct, including:

a. Rule 4-8.4(c): Conduct involving dishonesty, fraud, deceit, or misrepresentation;

b. Rule 4-8.4(d): Conduct prejudicial to the administration of justice;

c. Rule 4-3.4: Obstructing access to evidence or legal process; and

d. Rule 4-1.7: Undisclosed conflict of interest -- representing Laclede County while simultaneously purporting to assist Plaintiff in a matter directly adverse to the County.

**11. Attorney's Fees and Costs**

Reasonable attorney's fees under 42 U.S.C. Section 1988 and costs of suit under 28 U.S.C. Section 1920, including all filing fees, service costs, and reasonable litigation expenses incurred by Plaintiff as a pro se litigant.

**12. Such Other and Further Relief**

Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Leslie Dennis Mannon hereby demands a trial by jury on all issues so triable as a matter of right, pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure.

## TOTAL DAMAGES SOUGHT

**Compensatory Damages: $1,500,000.00**

**Punitive Damages: $750,000.00**

**TOTAL MINIMUM DAMAGES: $2,250,000.00**

(Plus Sunshine Law statutory penalties, attorney's fees, costs, and such other relief as the Court deems just and proper.)

Respectfully submitted,

**LESLIE DENNIS MANNON**

Plaintiff, Pro Se

25641 Ortega Drive

Lebanon, Missouri 65536

Date: May 1, 2026

## VERIFICATION

I, Leslie Dennis Mannon, declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that the following is true and correct:

1. I am the Plaintiff in the above-captioned action.

2. I have read the foregoing Complaint for Damages, Declaratory and Injunctive Relief. The factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

3. Those allegations made upon information and belief are stated as such and are believed by me to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 2, 2026.

**LESLIE DENNIS MANNON**

Plaintiff